Dion T. DiOSSI, Plaintiff,

v.

James Austin EDISON, et al.,
Defendants.

C. Ronald MARONEY and Eleanor S.
Maroney, Defendants and
Third–Party Plaintiffs,

v.

The WILMINGTON CLUB,
Third–Party Defendant.

Superior Court of Delaware,
New Castle County.

Submitted: May 14, 1990.
Decided: May 14, 1990.
Submitted on Reargument:
May 22, 1990.
Decided on Reargument: June 4, 1990.

Bruce L. Silverstein, of Young, Conaway, Stargatt & Taylor, Wilmington, for plaintiff.

F. Alton Tybout, of Tybout, Redfearn & Pell, Wilmington, for defendants and third-party plaintiffs Maroneys.

Richard P.S. Hannum, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for defendant Secretariat Ltd.

James W. Semple, of Morris, James, Hitchens & Williams, Wilmington, for third-party defendant Wilmington Club.

## OPINION

GEBELEIN, Judge.

Third-party defendant Wilmington Club (hereinafter "defendant") catered a party in which a minor allegedly became intoxicated and injured another person purportedly because the Club served alcoholic beverages to him, while it was performing its catering duties.[1]

The defendant has filed this motion *in limine* to preclude evidence that plaintiff's counsel obtained by contacting former employees of the Wilmington Club who had been employed by the Club on the night of the accident. Defendant further seeks to compel the plaintiff's attorney to produce all notes, memoranda or statements that record and reflect the statements of such former employees. Plaintiff opposes the motion.

---

1. The facts pertaining to this action are set forth in *DiOssi v. Maroney,* Del.Supr., 548 A.2d 1361 (1988).

Defendant argues that Rule 4.2 of the Delaware Lawyers' Rules of Professional Conduct prohibits such activity because it forbids *ex parte* communications with a party represented by counsel.[2] Defendant does not argue that the former employees are or were represented by counsel. Rather, it points to the Comments to the Rules to argue that *ex parte* communications with "any other person" whose act or omission may impute liability to the defendant (a party represented by counsel) or whose statement may constitute an admission of the defendant are precluded.[3]

The plaintiff's counsel concedes that he has contacted former employees of the defendant who worked at the party in question. Plaintiff argues, however, that the rules do not prohibit communications with *former* employees of a party represented by counsel. Plaintiff further argues that the intent of the Rule is clear, to prohibit communications with those presently able to bind the entity or party.

This is an issue of first impression in Delaware. The Delaware Supreme Court, however, in adopting the Rules, has stated that the Delaware Rules and Comments are based largely on the Model Rules and its Comments, which were adopted by the American Bar Association (ABA) in 1983. *In re: Adoption of Delaware Lawyers' Rules of Professional Conduct,* Del.Supr., (Sep. 12, 1985) (Order) *reprinted in* "The Delaware Lawyers' Rules of Professional Conduct," *Delaware Code Annotated,* Vol. 16, at 678–679. Thus, this Court looks to the ABA's interpretation of Model Rule 4.2, which is identical to the Delaware Rule, for persuasive guidance.

Ethics opinions construing Rule 4.2 have held that former employees are not within

the scope of the rule against *ex parte* communications. *ABA/BNA Lawyers' Manual on Professional Conduct,* "Colorado Ethics Opinion 69 (Rev) (6/20/87)" 901:1901 (Oct. 25, 1989) (a lawyer may interview a former employee with regard to all matters except as to communications subject to the attorney-client privilege); *Id.,* "Obligations to Third Persons," Vol. 5, No. 6 at 101–102 (Apr. 12, 1989), Florida Bar Professional Ethics Committee, Opinion 88–14 (Mar. 7, 1989) (the clear consensus of ethics committees that have addressed the issue is that former managers and former employees are not within the scope of the rule against *ex parte* contacts); *Id.,* "Alaska Ethics Opinion 88–3 (6/7/88)" at 901:1303 (Oct. 25, 1989) (former employees can no longer bind the corporation, so *ex parte* communications do not violate the rule against communications with an adverse party); *Id.,* "Illinois Ethics Opinion 85–12 (4/4/86)" at 901:3001 (Mar. 13, 1987) (by definition a former employee is no longer in a position to act or speak for the corporation; accordingly, a lawyer may directly communicate with a former employee without the corporation's consent without violating the code).

The defendant relies for authority not on ethics opinions, but upon a federal case for its proposition that former employees cannot be contacted. *Cagguila v. Wyeth Laboratories, Inc.,* E.D.Pa., 127 F.R.D. 653 (1989). However, this Court finds that case to be easily distinguishable. In *Cagguila,* the communication at issue was an *ex parte* communication with an employee of the defendant and made without the defendant's consent or notice that the statement would be sought. Unlike *Cagguila,* the plaintiff in this case was not

---

**2.** Rule 4.2 provides:
In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

**3.** The Comment reads:
In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation

with persons having a managerial responsibility on behalf of the organization, and *with any other person whose act or omission may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.* If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. (Emphasis added.)

interviewing a current employee, but only former employees.[4]

■ It is clear from the context of the comment language cited by defendant that this Rule is intended to preclude *ex parte* communications with those who could currently bind or admit liability for the represented entity. Its clear purpose is to foster and protect the attorney-client relationship and not to provide protection to a party in civil litigation nor to place a limit on discoverable material. The comment language immediately following the sentence cited by defendant allows for communication with an agent or employee who has his/her own attorney without notice to the organization, corporate entity or its attorney. This language clearly defeats the purpose advanced by defendant for Rule 4.2.

■ The Court, therefore, agrees with the ethics decisions that this Rule relates only to present principals, officers, employees, agents, etc. of a represented entity. Because the Rule does not prohibit *ex parte* communications with former employees, the defendant's motion to exclude the evidence at trial and to compel the plaintiff to produce the records that reflect the communication is DENIED.[5]

## UPON REARGUMENT

Defendant upon reargument takes the position that the Court in a footnote underlined and assumed the defendant relied on a larger portion of the Comment to the Rule than was actually relied on.[6] The defendant now states that it was relying only upon that specific portion of the Comment that said "with any other person whose act or omission may be imputed to the organization." Defendant further argues that the issue of statements that may be deemed admissions "has no relevance here." However, the defendant's original motion stated that the comment prohibits communications:

> ... with *any other person* whose act or omission in connection with that matter may be imputed to that organization for purposes of civil ... liability or whose statement may constitute an admission on the part of the organization. Para. 4, Motion in Limine.

> \*　　\*　　\*　　\*　　\*　　\*

> "... with "any other person" whose act or omission may impute liability to The Wilmington Club or whose statement may constitute an admission of The Wilmington Club. Para. 5, Motion in Limine.

And the defendant originally argued:

> The acts of the former employees, and bartenders may impute liability tot he Club (sic). Moreover, statements of the bartenders may constitute admissions of the Club. Para. 5, Motion in Limine.

Finally, in the order originally drafted by the defendant to implement the relief sought, the defendant asked to prevent the plaintiff's counsel from

> *ex parte* communications with any former employees of The Wilmington Club whose acts or omissions may impute civil liability to The Wilmington Club or whose statements may constitute an admission on the part of The Wilmington Club.

---

**4.** In fact, there is some dispute whether some of these individuals were actually employees of the Club or employees of other organizations called upon on some occasions to perform duties for the Club on a casual basis.

**5.** Depending on the nature of the records reflecting the information sought, normal discovery might be available. It is noted in this regard that a post-argument communication from defendant's attorney indicates that recordings of such statements may have been made, indeed without the interviewed individual's consent. Plaintiff's counsel indicates that such recordings may have occurred, but in any case,

they would not be unlawful and were not intended to be used at trial. The Court refers counsel to D.R.P.C. 4.4; 8.4(c) and directs that they be guided thereby. If counsel believes that a violation of one or both of these rules has occurred, such conduct should be referred for investigation by Disciplinary Counsel. The factual record before this Court at this time is inadequate to determine the nature of the purported violation. Finally, this issue is distinct from that raised by defendant's motion in limine.

**6.** *See* fn. 3, *supra*.

Clearly then, the defendant's position now contradicts its previous argument. The Court, in its footnote, merely presented the *full context* of the comment related to *ex parte* contacts in the case of an organization; underlining the full text of that portion of the sentence dealing with *ex parte* communications. This was the sentence cited by the defendant.

█ The Comments to the Rules of Professional Conduct are intended as guides to interpretation. The text of the Rules is authoritative. "The Delaware Lawyers' Rules of Professional Conduct," *Delaware Code Annotated*, Vol. 16 at 684. The Rules should be interpreted with reference to the purposes of legal representation and of the law itself. *Id.* at 682.

In interpreting Rule 4.2, this Court stated that the clear purpose of the Rule is to foster and protect the attorney-client relationship and not to protect a party in civil litigation, or to place a limit on discoverable material.[7] Further, if the Rule were meant to protect the defendant corporation, then the comment language allowing communications with employees who have their own attorney without notice to the corporation or its attorney would defeat that purpose. Relying on the obvious purpose and upon ethical opinions interpreting the Rule, this Court concluded that the Rule does not prohibit *ex parte* communications with former employees.

The ethics opinions are persuasive authority as the issue before the Court involves an ethical Rule and not Rules of Procedure. These Rules were initially drafted by the ABA and subsequently promulgated by the Supreme Court to govern the practice of attorneys in this State.

The Court notes that under the ABA's former Code of Professional Responsibility, the Washington Supreme Court interpreted whether a rule similar to Rule 4.2 was violated by *ex parte* communications with employees or former employees. *Wright by Wright v. Group Health Hospital*, Wash.Supr., 691 P.2d 564 (1984). Rule 7–

104, which is substantially similar to Rule 4.2, provided that,

> (A) During the course of his representation of a client a lawyer shall not:
>
> (1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

In *Wright*, a medical malpractice action, the injured patient's counsel sought to interview *ex parte* both present and former hospital employees who were involved in the care of the patient. The Court held that corporate employees should only be considered "parties," for the purposes of the disciplinary rule barring such contacts by opposing counsel, if they had managing authority sufficient to give them the legal right to speak for the corporation and bind it in a legal evidentiary sense.

The Court's rationale was that this interpretation was consistent with the purpose of the rule to protect represented parties from the dangers of dealing with adverse counsel; and that it advanced the policy of keeping the testimony of employee witnesses fully accessible to both parties. It indicated that there was no reason to distinguish between employees who witnessed an event and those whose acts or omissions caused the event leading to the action. *Id.* at 569.

Finally, the Court found that the purpose of the Rule was not to protect a corporate party from the revelation of prejudicial facts, but rather to preclude interviewing those corporate employees who have the authority to bind the corporation. *Id.*

Accordingly, the Court held that current employees who met the test of having managerial authority sufficient to give them the right to speak for and bind the corporation could not be interviewed; that non-speaking or non-managing agent employees could not be prohibited from meeting with adverse counsel; and that "since former employees could not possibly speak for

---

7. *See* p. 4, *supra*.

the corporation, the Rule against *ex parte* communications did not apply to them." *Id.* at 569.

This decision is consistent with the ethics opinions cited by this Court, *supra*, p. 1344, some of which interpreted DR 7–104(A)(1) and some of which interpreted the more recent version, Rule 4.2. *See also, Porter v. Arco Metals Company*, D.Mont., 642 F.Supp. 1116 (1986) (holding that the Rule is to preclude communication by a lawyer for one party with managing agents of a party that is a corporation or organization, because such individuals speak for the corporation and permitting opposing counsel to conduct *ex parte* interviews with employees present at the time of events in question, as long as counsel did not interview present or former employees with managerial responsibilities and did not inquire into privileged areas of communication); Annotation, *Right of Attorney to Conduct Ex Parte Interviews with Corporate Party's Nonmanagement Employees*, 50 A.L.R. 4th 652, 655 (1986) (generally, courts interpreting the term "parties" under the Rule have looked to whether the employee was in a managerial position.)

Similarly, this Court holds that the Rule is intended to preclude *ex parte* communications with those who could presently bind or currently make binding admissions of liability for the represented entity. The Rule exists to foster and protect the attorney-client relationship, not to protect a party in civil litigation from the discovery of non-privileged evidence.

The defendant upon reargument cites one case for the proposition that Rule 4.2 "protects, from *ex parte* interviews, a party's former employee whose acts or conduct may be imputed to the defendant for purposes of imposing civil liability." *Amarin Plastics, Inc. v. Maryland Cup Corp.*, D.Mass., 116 F.R.D. 36 (1987). In *Amarin*, the former employee was the defendant's corporate president at the time a contract was made between the plaintiff corporation and the defendant corporation, but was no longer employed by the defendant corporation at the time a dispute arose over payment on the contract. After he left the

defendant corporation, he continued to assist the corporation in various litigations which arose from facts of which he had knowledge. In particular, he assisted outside counsel for the defendant corporation in connection with the particular litigation in question. He was interviewed by the defendant corporation then met with the plaintiff's counsel. At that meeting he stated that he was not represented by counsel and was no longer involved with the defendant corporation and would be willing to disclose circumstances surrounding the contract between the parties. He also provided the plaintiff's counsel with a letter from the defendant's counsel which summarized his interview with the defendant's counsel.

The Court concluded that a factual basis had not been established that the former employee's acts or omissions could be imputed to the defendant.

In reaching its decision, the Court looked first to the language of the Rule 7–104, found that *ex parte* communications with present employees may violate the rule because they may be binding on the corporation; stated that it was "unclear under what circumstances, if any, DR 7–104(A)(1) applies to former employees of a corporation"; cited cases, including *Wright* and *Porter*, and held that the principal interest reflected in the Rule was the party's right to effective assistance of counsel. *Id.* at 39.

It then addressed the argument that the Comment to Rule 4.2 indicated that the Rule was sufficiently broad to include former control-group employees whose acts or omissions in connection with the matter may be imputed to the corporation. It then held that, *"Even if this language governs the instant dispute,"* the defendant had not demonstrated that any act or omission of the former corporate president may be imputed to the defendant. (Emphasis added.) It denied the defendant's motion for an order under the Rule without prejudice to the defendant's providing a factual basis for its conclusory assertion that the former employee's acts or omissions could be imputed to the defendant corporation.

**1348**

This Court finds the State Supreme Court decision in *Wright* to be more persuasive than the dictum in the *Amarin* case.

The *Wright* decision specifically addressed employees who were involved in the acts which gave rise to the litigation. *Wright* at 566, 567, 569. The *Amarin* decision dealt with a former employee who was no longer employed by the defendant corporation at the time the decision not to comply with the contract was made. *Amarin* at 37. Furthermore, *Amarin* dealt with a former employee who was at the highest managerial level of the company and participated in drafting the contract, continued his involvement with the company, even to the extent of actively assisting in their litigation, including the case in question. Indeed, in *Amarin* the officer in question was an integral part of the attorney-client relationship. Here, the plaintiff is proceeding under a theory of implied contract and it is clear that the employees who worked on the night of the incident were in no position to create, implement or breach a contract with the plaintiffs. They are not employees who could bind the corporation. They are factual witnesses who were present at the time of the party. They have no attorney-client relationship with defendant's attorneys.[8]

After reargument, the defendant's motion *in limine* is DENIED.

IT IS SO ORDERED.

---

8. None of these former employees have sought to participate in this motion *in limine*. None of these former employees have counsel of record in this proceeding.