**MONSANTO COMPANY, a corporation of the State of Delaware, Plaintiff,**

v.

**AETNA CASUALTY AND SURETY COMPANY, et al., Defendants.**

Superior Court of Delaware, New Castle County.

Sept. 10, 1990.

---

**46.** He declined to acknowledge to me the possi- bility of a death sentence.

Richard E. Poole, Richard L. Horwitz, Potter, Anderson & Corroon, Wilmington, and Jerold Oshinsky, Patricia A. Van Dyke, Anderson, Kill, Olick & Oshinsky, Washington, D.C., for plaintiff Monsanto Co.

Robert K. Beste, Jr., Biggs & Battaglia, Wilmington, and Timothy C. Russell, Patricia A. Gotschalk, of Drinker, Biddle & Reath, Washington, D.C., for defendant American Mfrs. Mut. Ins. Co. and on behalf of defendants Aetna Cas. and Sur. Co.; Allstate Ins. Co. (as successor to Northbrook Excess & Surplus Co., formerly Northbrook Ins. Co.); American Centennial Ins. Co.; American Home Assur. Co.; Appalachia Ins. Co.; C. James Ayliffe; an underwriter on his own behalf, and as a representative of Certain Underwriters at Lloyd's London; Birmingham Fire Ins. Co. of Pa.; Cal. Union Ins. Co.; Employers Ins.

of Wausau, a Mut. Co.; Fireman's Fund Ins. Co.; First State Ins. Co.; Granite State Ins. Co.; Hartford Acc. & Indem. Co.; C.E. Heath Compensation and Liability Ins. Co.; Hudson Ins. Co.; Ins. Co. of North America; Ins. Co. of the State of Pa.; Intern. Ins. Co. (CGL policy only); Intern. Ins. Co. (EIL policy only); Lexington Ins. Co.; Liberty Mut. Ins. Co.; Nat. Cas. Co.; Nat. Union Fire Ins. Co. of Pittsburgh; New England Ins. Co.; North Star Reinsurance Corp.; Northwestern Nat. Ins. Co.; Pacific Employers Ins. Co.; Protective Nat. Ins. Co. of Omaha; Royal Indem. Co.; St. Paul Surplus Lines Ins. Co.; The Travelers Indem. Co.; Unigard Sec. Ins. Co.; U.S. Fire Ins. Co. and The Home Ins. Co.

## ORDER

POPPITI, Judge.

[COUNSEL:] [Telling the truth in civil litigation] is, of course, a very attractive proposition. But, I would like to visit with your Honor further examination of that proposition, because while that might be nice in a perfect world, it is not the way the system operates in litigation in this country.

1. Monsanto originally sought a temporary restraining order and in the alternative a Rule 26 protective order. After the oral argument on June 8 on these issues, I decided by written order of the same date, that Monsanto's requests and contentions could more properly be resolved under Rule 26. Monsanto's application comes fast on the heels of a similar application in the case of *National Union Fire Insurance Company of Pittsburgh v. Stauffer Chemical Company,* Del.Super., C.A. No. 87C–SE–11–1–CV (filed September 2, 1987). *See* Stauffer's Emergency Motion Addressed to Travelers' Improper Investigatory Conduct, *National Union* (motion filed April 26, 1990). In that matter, on December 11, 1989, counsel for Stauffer Chemical Company brought to my attention purported irregular conduct on the part of investigators who were, in behalf of counsel for National Union, communicating with Stauffer's former employees. Based on the affirmative representations of counsel of record admitted *pro hac vice* to the effect that their investigators had always identified themselves and further that they advised the former employees that there was "a controversy among the parties," Transcript of Status Conference at 65, *National Union* (December 11, 1989), I did not see the need to do other than provide guidance to the effect that they should ascertain whether the former

THE COURT: Sad comment [counsel].

Transcript of proceedings, Oral Argument on Temporary Restraining Order at 25 (June 8, 1990).

Upon further reflection, I am compelled in the strongest way possible to reject counsel's observations as being so repugnant and so odious to fair minded people that it can only be considered as anathema to any system of civil justice under law.

This matter is presently before the Court on Monsanto Company's ("Monsanto") motion for a protective order pursuant to Rule 26(c) of the Superior Court Civil Rules.[1] Oral argument on Monsanto's motion was heard on June 8, 1990.

Monsanto contends that investigators, employed by certain defendant insurers, have misled former Monsanto employees in the course of investigating the claims at issue in this lawsuit. Monsanto asserts that such conduct violates Rules 4.2, 4.3 and 5.3 of the Delaware Lawyers' Rules of Professional Conduct.

In support of these contentions, Monsanto has submitted numerous affidavits of former employees of Monsanto who were employees are represented by counsel, should identify who they are, and should advise that a controversy existed among the parties. Having done that and having been advised by counsel admitted *pro hac vice* that it was already being done, I then stated:

I'm glad to hear that's occurring. I think that's all I should say at this point. If it's not occurring, then we may all have a problem, again, with another governing body. And it may be that if that happens, then the friendliness *pro hac* won't be friendly any more and that's how I get involved. Okay?

*Id.*

On April 26, 1990, by emergency motion, counsel for Stauffer advised that the formerly asserted irregularities were continuing to occur and further advised that certain representations made by counsel admitted *pro hac vice* were in fact not accurate. Subsequent to a hearing on Stauffer's motion on May 11, 1990, I issued an order dated May 29, 1990, memorializing my ultimate findings that the Rules of Professional Conduct had been violated and directing that certain sanctions issue. The issue in *National Union* is presently before me on National Union's Motion for Reargument of my decision and order. By separate document dated this date, for reasons stated substantially herein, I have denied the Motion for Reargument.

contacted by investigators hired by the defendants. The affidavits suggest that the investigators have not inquired as to whether the interviewee was represented by counsel, have failed to inform the interviewees that they represented insurance companies involved in litigation adverse to Monsanto, or have misrepresented the scope of their representation. *See* Memorandum of Law of Plaintiff Monsanto Company in Support of its Motion for a Temporary Restraining Order, exhibit a. Monsanto requests, *inter alia,* a protective order to establish a "script," that is, a procedure to be used by investigators in conducting interviews with former Monsanto employees.

The defendants respond that interviews with former employees do not violate the Rules of Professional Conduct, that they have no duty to make the disclosures and ask the questions proposed in Monsanto's "script," and that such a "script" violates Rule of Professional Conduct 3.4(f) [2] and would effectively cut-off a very important informal discovery tool.

For reasons stated herein and without any compunction whatsoever, I embrace the proposition that in civil litigation in this jurisdiction one who is in search of the truth must tell the truth.

 The Rules of Professional Conduct implicated in the matter *sub judice* are Rules 4.2 and 4.3. Rule of Professional Conduct 4.2 generally governs communications with represented persons. Rule 4.2 reads:

### RULE 4.2 COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL.

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

I am satisfied that in general Rule of Professional Conduct 4.2 does not prohibit contacts with former employees since the former employees are not "parties" to the litigation and cannot bind their former employers. *See DiOssi v. Edison,* Del.Super., 583 A.2d 1343, 1344–45 (1990) Gebelein, J., (Rule 4.2 "does not prohibit *ex parte* communications with former employees"); *Siguel v. Trustees of Tufts College,* C.A. No. 88–0626–Y, slip op. at 16, 1990 WL 29199 (D.Mass. March 12, 1990) (*ex parte* contact with former officers of defendant did not violate DR 7–104(A)(1)); *Polycast Technology Corp. v. Uniroyal, Inc.,* 129 F.R.D. 621, 626 (S.D.N.Y.1990) (DR 7–104 does not require a ban on *ex parte* communications with a former employee); *Oak Industries v. Zenith Industries,* No. 86C–4302, slip op. at 2, 1988 WL 79614 (N.D.Ill. July 27, 1988) ("The plain meaning of the word 'party', as used in DR 7–104 and Model Rule 4.2, does not include persons who are no longer associated with the employer at the time of the litigation."). *See generally Amarin Plastics, Inc. v. Maryland Cup Corp.,* 116 F.R.D. 36, 40 (D.Mass.1987).

 At the same time I am satisfied that an attorney has certain ethical obligations *vis-a-vis* an unrepresented non-party witness, such as a former employee, as set forth in Rule 4.3 which provides:

### RULE 4.3 DEALING WITH UNREPRESENTED PERSON.

In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.

The defendants assert that an investigator whose firm has been retained by a lawyer complies with Rule 4.3 by simply stating that he is an investigator seeking information. To support this contention

---

**2.** Rule 3.4(f) provides: A lawyer shall not "request a person other than a client to refrain from voluntarily giving relevant information to another party unless: (1) the person is a relative or an employee or other agent of a client; and (2) the lawyer reasonably believes that the persons interests will not be adversely affected by refraining from giving such information."

the defendants have submitted the affidavits of two ethics experts, Professor Stephen Gillers and Professor Geoffrey C. Hazard, Jr. The defendants also assert that Rule 4.3 is designed to protect unrepresented persons from receiving legal advice or divulging information to an attorney whose interests are actually or potentially adverse to those of the unrepresented person.[3]

Professor Hazard in his treatise, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct,* comments on the disclosure required under Rules 4.2 and 4.3. Professor Hazard states:

> This short Rule is taken virtually verbatim from DR 7–104(A)(1) of the Code of Professional Responsibility. In tandem with Rule 4.3, it prevents a lawyer from taking advantage of a lay person to secure admissions against interest or to achieve an unconscionable settlement of a dispute. The scheme of the two Rules is that while Rule 4.3 prevents a lawyer from overreaching an *unrepresented* person, Rule 4.2 prevents a lawyer from nullifying the protection a *represented* person has achieved by retaining counsel. According to Rule 4.2, therefore, Lawyer A may not speak to Lawyer B's client, except under circumstances controlled by Lawyer B.
>
> Under either Rule, of course, the third party retains ultimate control. An unrepresented person may choose to talk to an opposing lawyer after he has been duly warned, and a represented person may choose not to talk to the opposing side even if his lawyer has consented.

Hazard & Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct,* at 434 (Supp.1989). In the same treatise Professor Hazard illustrates this warning requirement in a hypothetical which is in my view similar to the case *sub judice.* The "Facts" and "Comment" to that hypothetical read in full and in part as follows:

### ILLUSTRATIVE CASE (b)

Facts: Lawyer L is litigating a products liability action against a major producer of home appliances. After considerable discovery has been taken, L sends an investigator to the home of J, one of the company's janitors, to learn information about certain plastic parts the company has claimed were discarded.

Comment: As in Case (a), it makes no difference that L has not gone to interview the janitor himself. If the contact is improper, L will have violated Rule 8.4(a) by procuring a violation of Rule 4.2. Since the investigator is in his employ, L will also have violated Rule 5.3 regarding nonlawyer assistants. The merits of this case are harder to judge than those of Case (a), however.

If the janitor is judged *not* to be "represented" by the company's lawyer, then he is not represented by anybody, and Rule 4.3 would apply. In that event, L's investigator would have to warn J about their respective positions before pressing ahead, thus giving J a fair opportunity to remain silent or to demand that he be subpoenaed before talking.

*Id.,* Illustrative Case (b). While the above hypothetical involves a current employee, I am satisfied that the analysis is equally applicable to a former employee. This conclusion is supported by the language of Rule 4.3, which does not distinguish between current and former employees but rather broadly refers to "unrepresented persons," and by Professor Hazard's affidavit, wherein he states that "Rule 4.3 precludes an attorney from misrepresenting his interest to [a] former employee." Affidavit of Geoffrey C. Hazard, Jr. [hereinafter Hazard Aff.] para. 12.

---

**3.** I am mindful of additional affidavits filed by Professors Gillers and Hazard in the Motion for Reargument filed in the *National Union* matter discussed *supra* at footnote 1. I am simply not persuaded by the analysis of these respected academicians. Indeed, I choose to accept an earlier analysis of Professor Hazard developed in a context removed from the heat of partisan litigation.

In my view Rule 4.3, read in conjunction with Rule 4.2, requires more than a simple disclosure by the investigator of his identity *qua* investigator. To hold otherwise would in my judgment violate at least the spirit of the Rules. Rule 4.2 suggests that a relevant inquiry is whether an individual is represented since the Rule is only applicable if the lawyer "knows" that the individual is "represented by another lawyer." The Rules contemplate that former employees, unrepresented by counsel, be warned of the respective positions of the parties to the dispute. Indeed, Professor Hazard recognized that "suitable controls and correctives can be envisioned that would prevent unjust advantage being realized from ... unfair tactics." Hazard Aff. para. 13.

Other courts in construing Rules 4.2 and 4.3, or rules which contain substantially similar language, have implemented procedures to guide the conduct of interviews with both current and former employees. In *Morrison v. Brandeis University*, 125 F.R.D. 14 (D.Mass.1989) the United States District Court for the District of Massachusetts, interpreting Disciplinary Rule 7-104(A)(1), the counterpart to Rule 4.2, granted the plaintiff's motion to interview current employees/witnesses of defendant Brandeis University. The court allowed such interviews provided that certain "guidelines" were followed. Those guidelines were:

(1) When plaintiff's counsel initially contacts any person as to which authorization to interview has herein been given (hereinafter, "any person"), she shall immediately disclose her capacity as counsel for the plaintiff in the above-styled litigation and the purpose of the contact, i.e. to request an interview.

(2) Whether or not to grant the request for an interview is completely up to the person, and the person's decision shall be respected.

(3) Any request by any person that the interview take place only in the presence of his or her personal attorney and/or the presence of Brandeis' attorney shall be honored.

(4) Brandeis shall advise all persons within the group which plaintiff's counsel has herein been given authorization to interview that they may, if they wish, agree to be interviewed by plaintiff's counsel to discuss matters which relate to this case and that no disciplinary or other adverse action will be taken by Brandeis against any person who consents to an interview.

These same four guidelines were implemented one year later by the same court in *Siguel v. Tufts College*, C.A. No. 88–0626–Y (D.Mass. March 12, 1990). There the court ruled, pursuant to DR 7–104(A)(1), that the plaintiff could interview current *and* former Tufts employees who were not named as individual defendants so long as these guidelines were followed. *Id.*, slip op. at 19. In once again adopting the guidelines, the court opined that the ethical determinations made by the court were "ultimately a question of the proper exercise of the [court's] supervisory powers," and that the interests of "high professional integrity and the appropriate administration of justice warrant adhering to the disciplinary rules regarding ethics." *Id.*, slip op. at 18. *See also University Patents, Inc. v. Kligman*, 737 F.Supp. 325, 327 (E.D.Pa. 1990) (citing *Siguel*, the court stated that there was no showing that counsel complied with the *Siguel* requirements "(1) to disclose his representative capacity to the interviewee; (2) to state his reasons for seeking the interview; (3) to inform the individual of his or her right to refuse to be interviewed; and (4) to inform the person that he or she could have their own counsel present."); *Bey v. Arlington Heights*, No. 88 C 5479, 1989 WL 103387 (N.D.Ill. Aug. 28, 1989) (current lower-echelon employees can be interviewed but are entitled to know that the interview is at the behest of plaintiff, that it is their choice whether or not to respond, and that they may have their own or defendant's attorney present).

More recently, a similar result was reached in *Upjohn Co. v. Aetna Casualty*, No. K88–124CA4 (W.D.Mich. July 13, 1990) (Opinion and Order), an insurance coverage case. In *Upjohn* the plaintiff sought a protective order alleging that former Up-

john employees had been improperly contacted by investigators hired by the defendant. The plaintiff submitted the affidavits of these former employees wherein the former employees alleged that the investigators failed to determine if the interviewees were represented, failed to identify for whom they were working, and represented that they were working for the Environmental Protection Agency. *See* Motion for Protective Order—Hearing Before The Honorable Doyle A. Rowland, Magistrate at 3–4, *Upjohn.* Upjohn argued that these contacts violated the Michigan Code of Professional Conduct, Rules 4.2 and 4.3, and in particular an informal opinion (No. 597) of the Michigan Professional and Judicial Ethics Committee. The informal opinion requires a lawyer, when communicating with an adverse corporation's former employee, to:

 (1) determine that the person is not represented by an attorney,

 (2) identify him/herself as an attorney for the adverse party in pending litigation involving [the witness's former] employer, and

 (3) state[ ] the purpose of the communication.

*Upjohn,* slip op. at 2 (citation omitted). The court, noting that the informal opinion was "persuasive," concluded that the investigators had violated ethical standards since they "did not determine if the former employees were represented by an attorney, clearly identify themselves as working for attorneys who were representing a client who was involved in litigation against Upjohn, nor adequately state the purpose of the interview." *Id.*

In fashioning a remedy and sanctions for the breach of ethical standards, the court required full disclosure of the names of the former employees as well as the content of the communications with the investigators and further ruled that any evidence obtained as a result of the *ex parte* communications with former employees would not be admissible at trial. *Id.,* slip op. at 3.

Finally, recognizing the need to take control of the process, the court further ordered that Aetna could not interview any former employee unless it first delivered to such employee a letter written by the magistrate which reads as follows:

ATTACHMENT A

(Investigator's Letterhead)

Dear:

This letter is being delivered to you pursuant to an order of a federal court. Please read the letter carefully so that you can decide whether or not you would be willing to allow me to interview you at a location of your convenience regarding your former employer, Upjohn.

I am a private investigator who has been retained by certain insurers who are defendants in a lawsuit brought by your former employer. The lawsuit concerns Upjohn's efforts to obtain insurance coverage for certain environmental claims that have been made against Upjohn concerning various sites.

In connection with the lawsuit, I am attempting to gather information about the manner in which Upjohn operated these sites. Such information may help my clients support their position against Upjohn that there is no insurance coverage for the environmental claims that are involved in the lawsuit. For that reason, I would like to interview you about these subjects.

You have no obligation to agree to an interview. On the other hand, there is nothing that prevents you from agreeing to be interviewed. Whether or not you agree to an interview, you may be asked to give testimony in this case.

Upjohn is willing to answer any questions you may have about this request for an interview, and to provide a lawyer to be with you for the interview if you desire or in the event that you are subpoenaed to testify. You are under no obligation to contact Upjohn if you do not want to. However, if you wish to do so, you may call [Upjohn's telephone number].

If you are agreeable to an interview, you will be asked to sign a copy of this letter acknowledging that you have read the

letter and have voluntarily agreed to be interviewed.

Very truly yours,

*Id.,* attachment a.

Applying the foregoing to the case *sub judice,* I have reviewed the affidavits submitted by Monsanto of former employees who were contacted by investigators hired by the defendants. Therein, a number of the former employees/affiants stated, under oath, that the investigators did not disclose they represented insurance companies. Some stated that the investigators did say they represented Monsanto's insurance companies but did not say that Monsanto was suing the insurance companies. One former employee was told by the investigator that the investigator "worked for a firm in New Orleans which had been commissioned by the chemical industry to look into which companies were polluting." Affidavit of Junior Ruiz para. 2. Two former employees were under the impression that the investigators represented Monsanto. *See* Affidavit of Thomas J. Byrne para. 2; Affidavit of David K. Denner para. 3. One former employee swore that his wife asked one of the investigators whether there was a lawsuit, and the investigator replied "no." Affidavit of Rodney J. Duhon, Sr. para. 3. One former employee was told that the investigator was "interested in Monsanto's efforts to correct environmental problems." Affidavit of Pasquale Romeo para. 3. Two former employees were told by investigators that the investigators were "compiling a book" about the plant. *See* Affidavit of Van Mayo para. 2; Affidavit of Noland Berthelot para. 2. Finally, one former employee was told by an investigator that the investigator "worked for the Government, and was checking on pollution." Affidavit of H.B. Sims para. 2.

▆▆ While some of the above statements were contradicted by the counter-affidavits of the investigators filed by the defendants, I am satisfied that there exists *prima facie* evidence to support the conclusion that some former employees were affirmatively misled. Further, while I am mindful in this case that defense counsel have made efforts to retain the most expe-

rienced and professional investigatory companies and that at times some investigators may make improper statements to interviewees in their fervor to gain information, attorneys who are officers of this court must realize that they are accountable and must supervise the investigators in order to assure that the type of misleading conduct that has previously occurred will not happen in the future. I will not countenance this type of conduct and will therefore fashion a protective order to insure that, at least in this litigation in Delaware, the parties and their agents will be guided by truth and honesty, and not by lies and deception.

▆▆ There has been much discussion as to whether I should make a specific finding as to whether there has been a violation of the Rules of Professional Conduct. I am mindful that the Rules of Professional Conduct are "to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies." Delaware Rules of Professional Conduct preamble. Thus, in general, the "business" of the court is to dispose of "litigation" and not to oversee the ethics of those that practice before it unless the behavior "taints" the trial. *Suggs v. Capital Cities/ABC,* No. 86 Cir. 2774, slip op. at 14, 1990 WL 182314 (S.D.N.Y. April 24, 1990). At the same time when conduct "taints" the proceedings, and I am convinced that the misleading nature of the conduct of the investigators in this matter has done so, I must take substantial and strong steps to eliminate the taint and protect the process in the future. In order to do so, I am satisfied that it is appropriate to conclude that when the investigators did not determine if former employees were represented by counsel, when the investigators did not clearly identify themselves as working for attorneys who were representing a client which was involved in litigation against their former employer, when investigators did not clearly state the purpose of the interview and where affirmative misrepresentations regarding these matters were made, Rule 4.2 and Rule 4.3 were violated. Further, it is not necessary for

me to make a finding that the conduct was intentional in order to find a violation of the Rules of Professional Responsibility or to fashion a protective order under Superior Court Rule 26.

Having stated the above:

A. By December 14, 1990, the law firms of Nussbaum & Wald and Jackson & Campbell,[4] and Travelers shall provide Monsanto with the identity and work and home addresses, to the extent known, of any investigators employed by them, directly or indirectly, who have interviewed any former Monsanto employee.

B. By December 14, 1990, the law firms of Nussbaum & Wald and Jackson & Campbell, and Travelers shall provide Monsanto with the identity of any former Monsanto employee contacted by investigators (along with indication of which investigator contacted each individual).

C. By December 21, 1990, the law firms of Nussbaum & Wald and Jackson & Campbell, and Travelers shall provide to Monsanto any and all statements obtained from former Monsanto employees. All defendants who are participants in the cost-sharing agreement and Travelers shall produce all notes, reports and/or documents regarding the interviews of former Monsanto employees.

D. Consideration of whether information obtained as a result of the conduct found to be in violation of the Rules of Professional Conduct will be inadmissible at trial shall be deferred pending Monsanto's review of the information required to be produced and further application.

E. Consideration of the plaintiff's application for costs and fees shall be deferred pending further hearing and determination of which attorneys, if any, are responsible for the investigatory conduct found to be in violation of Rule 5.3.

F. No interview of any former employee of Monsanto shall be conducted unless the following script is used by the investigator or attorney conducting the interview:

1. I am a (private investigator—attorney) working on behalf of _____.
I want you to understand that _____ and several other insurance companies have sued Monsanto Company. That suit is pending in Delaware Superior Court. The purpose of that lawsuit is to determine whether Monsanto's insurance companies will be required to reimburse Monsanto for any amounts of money Monsanto must pay as a result of alleged environmental property damage and personal injury caused by Monsanto. I have been engaged by _____ to investigate the issues involved in that lawsuit between Monsanto and its insurance companies.

2. Are you represented by an attorney in this litigation between Monsanto and its insurance companies?
If answer is "yes", end questioning.
If answer is "no", ask:

3. May I interview you at this time about the issues in this litigation?
If answer is "no", end questioning.
If answer is "yes", substance of interview may commence.

G. Any interview conducted in violation of this order will result in sanctions issued against counsel for the offending party to include, but not be limited to, a fine in the amount of $5,000.00.

H. A copy of this order is being directed to the attention of Charles Slanina, Esquire, Disciplinary Counsel.

In his Socratic-style essay "Truth" Sir Francis Bacon observed:

> [T]he truth of civil business, it will be acknowledged even by those that practise it not that clear and round dealing is the honour of man's nature; and that

---

**4.** I am satisfied that the responsibility for the production of this information should rest with Nussbaum & Wald and Jackson & Campbell. Apparently, the two attorneys who were designated as contacts for the two investigation firms retained by the defense group and who reported to defendants' counsel, are members of these law firms respectively. *See* Certain Defendants' Answering Memorandum at 3–4. This allocation of responsibility is based on my belief that these two law firms are in the best position to provide the information required to be produced, and is not meant to suggest a pre-determination of culpability.

mixture of falsehood is like alloy in coin of gold and silver, which may make the metal work the better, but it embaseth it. For these winding and crooked courses are the goings of the serpent, which goeth basely upon the belly, and not upon the feet. There is no vice that doth so cover a man with shame as to be found false and perfidious....

In the courts of Delaware, the hallmark of justice under law in civil litigation cannot be expediency marred by deception, but must rather be truth—to accept or require anything less would, in my view, debase the system of justice and belittle all who serve it.

IT IS SO ORDERED.