600 A.2d 165

IN RE ENVIRONMENTAL INSURANCE DECLARATORY
JUDGMENT ACTIONS.

Superior Court of New Jersey
Law Division Union County

Decided May 6, 1991.

*Neal Brendel,* admitted pro hac vice, for plaintiff (*Kirkpatrick & Lockhart,* attorneys; *Peter Kalis* on the brief).

*John C. Sullivan* for certain members of defendants' liaison committee (*Manta & Welge,* attorneys; *Kathleen K. Kerns* on the brief).

*James Pabarue,* admitted pro hac vice, for defendant Commercial Union Insurance Company (*Clark, Ladner, Fortenbaugh & Young,* attorneys; *James W. Christie* and *Vicky A. Kaiser* on the brief).

*William J. Kresse,* admitted pro hac vice, for defendant Allstate Insurance Company *(Gleason, McGuire & Shreffler;* attorneys).

WEISS, L., J.S.C.

These consolidated cases involve environmental insurance declaratory judgment actions. Without encumbering the record, it is apparent to all parties in these consolidated cases that pre-trial discovery will be voluminous, extended and, to a great degree, burdensome to the parties and the court. At the last liaison committee meeting, it was brought to the court's attention that the issue of interviewing former employees of the various insureds was becoming a matter of contention which had to be addressed and accordingly resolved. Both plaintiffs' and defendants' counsel have sought the guidance of this court on how to conduct such interviews to avoid any subsequent claims of breaching the rules of professional conduct (hereinafter "RPC").

All parties recognize that the standard to apply to the issue before this court has been clearly enunciated by Judge Vincent J. Poppiti.

> In the courts of Delaware (and also in New Jersey), the hallmark of justice under the law in civil litigation cannot be expediency marred by deception, but must rather be truth—to require anything less would, in my view, debase the system and belittle all who serve it. [*Monsanto v. Aetna Casualty & Surety Co.,* 593 A.2d 1013, 1022 (Del.Super.Ct.1990).]

The following is this court's opinion with respect to this issue.

Discovery is a necessary tool to allow all parties to prepare a case for trial. Free and unencumbered investigation has been the guiding principal in the preparation of a lawsuit. The New Jersey rules of civil procedure incorporate said policy to prevent an adversary from hiding information which will be used to ambush a party at the time of trial, *i.e.,* interrogatories, depositions, production of documents and supplying expert reports. For all practical purposes, there exists no reason why an attorney should come before the court without full knowledge

of his adversary's case and the witnesses who will testify. Many judges believe that discovery rules, in their present day context, have become a method of beating an adversary into submission and forcing a settlement of the case rather than incurring the exorbitant expense that exists in conducting discovery in a complex case.

The hallmark of any action taken by an attorney is to conduct himself at the highest level of fairness and integrity. These very same standards are also translated to an attorney's clients and any other persons involved in pursuing a claim on a party's behalf. These standards are set forth in the RPC, specifically 4.1, 4.2, 4.3 and 3.4. In order to understand the purpose of these rules, it is necessary to understand the roles these parties are playing in the discovery process.

As part of their duty to defend, insurers have a duty to investigate the factual allegations of any underlying liability action which could be brought against the policyholder by third parties. In addition, insurers also have a duty to investigate whether coverage exists under the policy for a particular claim. During this investigation process, the policyholder has a duty to cooperate with its insurers and its agents/employees as to the factual allegations of any possible underlying liability actions. Whether a duty to cooperate with an insurer with respect to a coverage investigation exists is not as clear.

Once an insurer has denied coverage, the policyholder no longer has a duty to cooperate with its carrier in the course of their investigation. Once coverage has been denied, any insurance company contact with the insured becomes improper. As such, carriers may resort to using the claim investigation process as a means of obtaining pre-litigation coverage discovery after a coverage determination has been made. By engaging in such conduct, insurers are able to prepare their case while the insured remains unaware that the lawsuit is in the offing. The propriety of such conduct raises many questions.

In this respect, the issue of the proper use of investigators by carriers in the course of a coverage lawsuit surfaces. These investigators have been hired by attorneys or their clients to solicit information from former employees of policyholders. Further, many of these investigators have allegedly undertaken *ex parte* interviews without informing the former employees of the interests they represent and of the adverse nature of those interests. As such, these investigators are considered to be engaged by the attorney and it is incumbent upon the attorney to inform and enforce the standards of professional conduct as set forth in the RPC. This standard is addressed in RPC 5.3(b) which states in pertinent part:

Responsibilities Regarding Nonlawyer Assistants....

(b) a lawyer having direct supervisory authority over the non-lawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer....

There is no doubt that irrespective of whether the carrier or the attorney hired the investigator, it is the duty and responsibility of the attorney to insure proper conduct and compliance with the RPC. As the court in *Upjohn v. Aetna Casualty & Surety Co.*, (W.D.Mich. July 13, 1990), aff'd., (W.D.Mich. Jan. 18, 1991), 768 *F.Supp.* 1186, stated with respect to abiding by the Michigan Code of Professional Conduct.

It is improper for a lawyer or his or her representative to obtain information without following the guidelines set forth in the advisory opinion and then use this information in a lawsuit. Ethical considerations are as applicable to representatives of lawyers as to lawyers themselves. Further, not to impose these rules when a lawyer's investigator acts improperly would render the rules relatively meaningless. [ (slip opinion at 2) ]

Accordingly, an attorney must insure that his clients and any other representatives abide by the standards set forth in the RPC.

### *RPC 4.2 does not bar ex parte communications with former employees.*

Having determined that there exist guidelines which must be followed by both direct and indirect parties to a lawsuit, the next issue to be resolved is whether former employ-

ees are parties to a lawsuit. With respect to this question, it is necessary to address RPC 4.2 which states:

> Communication with a Person Represented by Counsel
>
> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Historically, an attorney has been barred from discussing the subject matter of a proceeding with an adverse party who is represented by counsel. As such, RPC 4.2 in general terms precluded an attorney or someone acting on his behalf, from communicating with a party that the attorney knows is represented by counsel. "The purpose of this restriction is to preserve the integrity of the attorney-client relationship by protecting a represented party from the superior knowledge and skill of opposing counsel." *Curley v. Cumberland Farms, Inc.*, 134 *F.R.D.* 77, 85 (D.N.J.1990). *See generally Frey v. Department of Health & Human Services*, 106 *F.R.D.* 32 (E.D.N.Y.1985); *Wright v. Group Health Hospital*, 103 *Wash.*2d 192, 691 *P.*2d 564 (1984); *University Patents, Inc. v. Kligman*, 737 *F.Supp.* 325 (E.D.Pa.1990).

However, it is important to note that this rule is silent as to contact with former employees. Although the language of the rule does not address former employees, plaintiffs in these consolidated cases contend that the rule must be read to encompass certain types of former employees. In light of this argument, it is necessary to look to the official American Bar Association (ABA) comment to the rule.

> The ABA comment to RPC 4.2 states:
>
> In the case of an organization, this rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this rule.... This rule also covers any person whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question.

While the comment has not been adopted by the New Jersey Supreme Court, the Court has recognized that for assistance in interpreting these rules, reference should be made to the ABA comments. Accordingly, while the Court is not bound to follow the comments accompanying each of the rules, they do agree that they should be considered in interpreting RPC 4.2. A careful reading of RPC 4.2 and its comment reveals that, in fact, the rule does not apply to former employees, but to those who continue to be employed by the organization who may have relevant knowledge important to the case.

In the present case, for purposes of interpreting the rule, it is important to recognize that the parties sought to be interviewed are former employees. The issue before this court has been raised in several other jurisdictions which have determined that *ex parte* interviews are not prohibited with respect to former employees. See *DiOssi v. Edison,* 583 *A.*2d 1343 (Del.Super.Ct.1990); *Amland Properties v. Alcoa,* C.A. No. 86–1830 (MTB) (D.N.J. Jan. 28, 1991).

In *DiOssi,* defendants argued that RPC 4.2 forbade *ex parte* communications with former employees because such employees could impute liability to defendant (a party represented by counsel) or their statements could constitute an admission of defendant. Plaintiffs in that case argued that the rule did not prohibit communications with former employees of a party represented by counsel. In addition, plaintiff argued that the intent of the rule was clear, that is, to prohibit communications with those parties able to bind the entity or the party. Noting that RPC 4.2 related only to those present employees, agents, officers, *etc.,* of the entity, the court stated:

It is clear from the context of the comment language cited by the defendant that this Rule is intended to preclude *ex parte* communications with those who could currently bind or admit liability for the represented entity. Its clear purpose is to foster and protect the attorney-client relationship and not to provide protection to a party in civil litigation nor to place a limit on discoverable material. The comment language immediately following the sentence cited by defendant allows for communication with an agent or employee who has his/her own attorney without notice to the organization, corporate entity or its

attorney. This language clearly defeats the purpose advanced by defendant for Rule 4.2.

The court, therefore, agreed with the ethics decisions that this Rule relates only to present principals, officers, employees, agents, etc. of a represented entity. Because the Rule does not prohibit *ex parte* communications with former employees, the defendant's motion to exclude the evidence at trial and to compel the plaintiff to produce the records that reflect the communications is DENIED. [583 *A.*2d at 1344-45]

This same reasoning was later upheld in *Monsanto v. Aetna Casualty & Surety Co., supra,* wherein the court stated:

... I am satisfied that in general Rule of Professional Conduct 4.2 does not prohibit contacts with former employees since the former employees are not 'parties' to the litigation and cannot bind their former employers. [593 *A.*2d at 1016]

See also *Siguel v. Trustees of Tufts College,* C.A. No. 88-0626-4, slip op. at 16, 1990 WL 29199 (D.Mass. March 12, 1990) (*Ex parte* contact with former officers of defendant did not violate DR 7-104(A)(1).); *Polycast Technology Corp. v. Uniroyal, Inc.,* 129 *F.R.D.* 621, 627, 628 (S.D.N.Y.1990) (DR 7-104(A)(1) does not require a ban on *ex parte* communications with a former employee); *Oak Industries v. Zenith Industries,* No. 86C-4302, slip op. at 2, 1988 WL 79614 (N.D.Ill. July 27, 1988) ("The plain meaning of the word 'party,' as used in DR 7-104 and Model Rule 4.2, does not include persons who are no longer associated with the employer at the time of the litigation.")

Further, United States Magistrate Simandle in *Curley v. Cumberland Farms, Inc., supra,* noted the importance of informal interviews in view of the time and cost factor.

Where such contacts are numerous and formalized, the cost of depositions becomes too great for some litigants to bear, the accessibility to the truth-finding process is impaired, and valuable litigation time is wasted before one even could learn whether the witness has relevant knowledge. It would render scant justice to these plaintiffs to say, in the present context, that their counsel may learn nothing of the locations and knowledge possessed by these 80 peripheral ex-employees without conducting expensive and time consuming depositions. Routine informal interviews of such persons who are not believed to be central to the case are a staple of good, ethical trial preparation. [134 *F.R.D.* at 90]

The importance of *ex parte* communications with respect to discovery has also been echoed by many others in the legal field.

Interviews, as discovery tools, provide an attorney with the opportunity to informally contact adverse witnesses and other non-parties in an effort to discover the truth. Because the attorney as advocate is obliged to search out the truth and then present that truth to the court in the light most favorable to her client, any rule that limits the attorney's access to the truth necessarily contravenes a basic aim of our legal system.

A rule that prevents opposing counsel from informally interviewing a possible witness because the witness is considered a 'party' to the suit frustrates the search for truth. . . .

In evaluating the scope of *ex parte* interviews, the value of discovering the truth should be balanced against the possible burdens and dangers that accompany the interview process [J. Krulewitch, "Ex Parte Communication with Corporate Parties: The Scope of the Limitations on Attorney Communications with One of Adverse Interest," 82 Nw.U.L.Rev. 1274, 1278 (1988); footnotes omitted]

Most recently, the American Bar Association standing committee on ethics and professional responsibility issued a formal opinion regarding contact with former employees of an adverse corporate party. The committee concluded that the prohibition of RPC 4.2 with respect to contacts by a lawyer with employees of an opposing party does not extend to former employees of that party.

While the Committee recognizes that persuasive policy arguments can be and have been made for extending the ambit of Model Rule 4.2 to cover some former corporate employers, the fact remains that the text of the Rule does not do so and the comment gives no basis for concluding that such coverage was intended. Especially where, as here, the effect of the Rule is to inhibit the acquisition of information about one's case, the Committee is loath, given the text of Model Rule 4.2 and its Comment, to expand its coverage to former employees by means of liberal interpretation.

Accordingly, it is the opinion of the Committee that a lawyer representing a client in a matter adverse to a corporate party that is represented by another lawyer may, without violating Model Rule 4.2, communicate about the subject of the representation with an unrepresented former employee of the corporate entity without the consent of the corporation's lawyer. [*American Bar Association F.O.* 91–359 (March 22, 1991) at 5]

*RPC 4.3 offers guidance as to how ex parte*
*interviews should be conducted.*

Having determined that an attorney has a duty to insure that any person involved in the action must act and

conduct himself in accordance with the RPC, an attorney also has certain ethical obligations *vis-à-vis* an unrepresented non-party witness, such as a former employee. These obligations are set forth in RPC 4.3 which states:

Dealing with Unrepresented Person

In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.

RPC 4.3 does not distinguish between current and former employees. Instead, the rule broadly refers to unrepresented persons irrespective of their employment status with the entity.

Much has been written with respect to what disclosure is required and necessary under RPC 4.2 and 4.3. Professor Hazard states in his treatise:

This short Rule is taken virtually verbatim from DR 7–103(A)(1) of the Code of Professional Responsibility. In tandem with Rule 4.3, it prevents a lawyer from taking advantage of a lay person to secure admissions against interest or to achieve an unconscionable settlement of a dispute. The scheme of the two Rules is that while Rule 4.3 prevents a lawyer from overreaching an unrepresented person, Rule 4.2 prevents a lawyer from nullifying the protection a represented person has achieved by retaining counsel. According to Rule 4.2, therefore, Lawyer A may not speak to Lawyer B's client, except under circumstances controlled by Lawyer B.

Under either Rule, of course, the third party retains ultimate control. An unrepresented person may choose to talk to an opposing lawyer after he has been duly warned, and a represented person may choose not to talk to the opposing side even if his lawyer has consented. [Hazard & Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct*, (1989) at 434]

In short, RPC 4.3 requires more than the investigator identifying himself to the party being interviewed.

... Rule 4.3, read in conjunction with Rule 4.2, requires more than a simple disclosure by the investigator of his identity qua investigator. To hold otherwise would in my judgment violate at least the spirit of the Rules. Rule 4.2 suggests that a relevant inquiry is whether an individual is represented since the Rule is only applicable if the lawyer 'knows' that the individual is 'represented by another lawyer.' The Rules contemplate that former employees, unrepresented by counsel, be warned of the respective positions of the parties to the dispute. [*Monsanto*, supra, 593 A.2d at 1017–18]

This was recently reiterated in a formal opinion issued by the ABA Standing Committee on Ethics and Professional Responsibility.

> The lawyer should also punctiliously comply with the requirements of Rule 4.3, which addresses a lawyer's dealings with unrepresented persons. That rule, insofar as pertinent here, requires that the lawyer contacting a former employee of an opposing corporate party make clear the nature of the lawyer's role in the matter giving occasion for the contact, including the identity of the lawyer's client and the fact that the witness's former employer is an adverse party. [*American Bar Association F.O.* 91–359, *supra* at 5]

Other courts have, in construing Rules 4.2 and 4.3, implemented procedures to guide the conduct of interview with current and former employees. In *Morrison v. Brandeis University*, 125 *F.R.D.* 14 (D.Mass.1989), the United States District Court for the District of Massachusetts granted a motion to interview both current and former employees of defendant. However, the court allowed the interviews only if certain guidelines were followed. The guidelines provided as follows:

1. When plaintiff's counsel initially contacts any person as to which authorization to interview has herein been given (hereinafter, "any person"), she shall immediately disclose her capacity as counsel for plaintiff in the above-styled litigation and the purpose of the contact, *i.e.*, to request an interview.

2. Whether or not to grant the request for an interview is completely up to the person, and the person's decision shall be respected.

3. Any request by any person that the interview take place only in the presence of his or her personal attorney and/or the presence of Brandeis' attorney shall be honored.

4. Brandeis shall advise all persons within the group which plaintiff's counsel has herein been given authorization to interview that they may, if they wish, agree to be interviewed by plaintiff's counsel to discuss matters which relate to this case and that disciplinary or other adverse action will be taken by Brandeis against any person who consents to an interview.

One year later in *Siguel v. Tufts College*, 1990 WL 29199 (D.Mass. March 12, 1990), the court implemented the same guidelines in a similar case. In *Siguel*, the court ruled that plaintiff could interview both current and former employees who were not named as individual defendants as long as the guidelines were followed. In adopting these guidelines, the *Siguel* Court opined that the ethical determinations made by

the court were warranted in view of the high professional integrity and the appropriate administration of justice.

Most recently, a similar result was reached in *Upjohn Co. v. Aetna Casualty & Surety Co.*, (W.D.Mich. July 13, 1990). In *Upjohn*, plaintiff sought a protective order alleging that former employees had been improperly contacted by investigators hired by defendant. As part of their moving papers, plaintiff submitted affidavits of several former employees who alleged that the investigators had failed to determine if they were represented by counsel, failed to identify themselves, and represented that they were working for the Environmental Protection Agency. Plaintiff argued that these contacts violated RPC 4.2 and 4.3, and, in particular, an informal opinion of the Michigan Professional and Judicial Ethics Committee which required an attorney when communicating with an adverse corporation's former employee to:

1. determine that "the person is not represented by an attorney,"
2. "identify him/herself as an attorney for the adverse party in pending litigation involving [the witness' former] employer," and
3. state ... the purpose of the communication. [*Upjohn, supra,* (slip opinion at 2)]

The court concluded that the investigators had violated ethical standards since they did not determine if the former employees were represented by counsel, failed to identify themselves as working for adverse parties and failed to adequately state the purpose of the interview. Because of the breach of ethical standards, the court required full disclosure of the names of the former employees as well as the content of the communications and any evidence resulting from the *ex parte* communications. In addition, the court ordered that defendant could not interview any former employee unless it first delivered a letter to that employee explaining who they were and who they represented, what their purpose was and what their rights were with respect to agreeing to being interviewed.

In the present case plaintiffs allege that both present and former employees have been approached by such investigators

inquiring as to information pertaining to the disposal practices at certain facilities. According to plaintiff's brief and relevant portions of several depositions, the interviewers typically did not inquire as to whether the former employee was represented by counsel, nor did they advise the employees that they were retained by a party that was engaged in litigation against their former employer. Some have gone as far as to misrepresent for whom they worked, identifying themselves as representing some environmental survey, the Department of Environmental Protection, Dow Chemical, Green Peace, and plaintiff entities themselves.

In view of this, it is the responsibility of this court to insure that interviews be conducted according to the standards set by the RPC and further, to insure that "the parties and their agents will be guided by truth and honesty, and not by lies and deception." *Monsanto, supra,* 593 A.2d at 1020. In general terms, the purpose of the court is to dispose of litigation, however, in view of the circumstances and the alleged actions taken by several of defendants in interviewing former employees, this court finds itself compelled to oversee the ethics of those that are practicing before it. Accordingly, this court will require all parties to this action who intend to interview former employees to abide by the guidelines set by this court as a prerequisite to any interview. No interview of any former employee shall be conducted unless the following script is used by the investigator or attorney conducting the interview:

1. I am a (private investigator/attorney) working on behalf of _____. I want you to understand that _____ and several other companies have sued their insurance carriers. That said action is pending in the Union County Superior Court. The purpose of the lawsuit is to determine whether _____ insurance companies will be required to reimburse _____ for any amounts of money _____ must pay as a result of environmental property damage and personal injury caused by _____. I have been engaged by _____ to investigate the issues involved in that lawsuit between _____ and _____, its insurance company.

2. Are you represented by an attorney in this litigation between _____ and _____?

If answer is "YES," end questioning.

If answer is "NO," ask:

3. May I interview you at this time about the issues in this litigation?

If answer is "NO," end questioning.

If answer is "YES," substance of interview may commence.

## Conclusion.

The importance of the fact-finding process and the never ending search for truth could not have been put more eloquently than as stated by the Honorable Vincent J. Poppiti in the *Monsanto* case:

> ... without any compunction whatsoever, I embrace the proposition that in civil litigation in this jurisdiction one who is in search of the truth must tell the truth. [*Monsanto*, supra, 593 *A*.2d at 1016]

Accordingly, for the foregoing reasons, informal interviews of former employees of a corporate entity are not ethically prohibited by RPC 4.2 and 4.3. RPC 4.2 only precludes contact with persons who are part of the litigation, not mere witnesses. In this respect, RPC 4.2 does not preclude informal contact with such former employees. Further, in order to avoid any unethical conduct and any behavior which may taint trial in these consolidated matters, this court deems it necessary, in the interest of truth and justice, to require any party conducting an *ex parte* interview with a former employee to read the aforementioned script, so as to insure that the standards set forth in RPC 4.3 will be followed, and if a written statement is signed by the former employee, the script shall also be included and signed by the former employee.