**James Leslie BROWN, Plaintiff,**

v.

**ST. JOSEPH COUNTY,
et al., Defendants.**

**No. S90–221 (P).**

United States District Court,
N.D. Indiana,
South Bend Division.

April 12, 1993.

Lance Wittry and Patrick Bennett of Bennett and Sheff, Indianapolis, IN, argued, for plaintiff.

Larry L. Ambler of Allen Fedder Herendeen and Kowals, South Bend, IN, argued, for The County defendants.

D. Andrew Spalding of May, Oberfell & Lorber, South Bend, IN, argued, for Memorial Hosp., Memorial Staffing & Home Care and Nurse Van Deventer.

Robert J. Konopa of Konopa & Murphy, P.C., South Bend, IN, argued, for H.O. Foley, M.D.

## MEMORANDUM AND ORDER

PIERCE, United States Magistrate Judge.

Plaintiff, James Leslie Brown, brought this action under 42 U.S.C. § 1983, alleging, among other things, that the defendants violated his constitutional rights by failing to provide him with adequate medical care while he was a pre-trial detainee at the St. Joseph County Jail ("the Jail"). The defendants include St. Joseph County; Joseph F. Nagy, the County Sheriff; Frank Canarecci, Assistant Chief of the St. Joseph County Police Department; John Dombrowski, former Sergeant of the Department; Dr. Hansel O. Foley, a contract physician at the Jail (collectively the "County defendants"); Memorial Hospital of South Bend, Inc. d/b/a Memorial Staffing and Home Care Services ("Memorial"), which contracted with the County to provide nursing and healthcare services for Jail inmates; and "Nurse [Iris] Van Deventer," Memorial's head nurse at the Jail. Before the court are two motions by Memorial. The first, which has been joined in by the County defendants, seeks to suppress an affidavit obtained by one of Mr. Brown's attorneys from a former Memorial employee, Mary Grabe Podemski, and to bar her testimony. The second, joined in only by Dr. Foley, asks that Mr. Brown's counsel be disqualified for alleged ethical violations.

Also before the court is a combined petition by plaintiff seeking reconsideration of this court's Order of October 7, 1992, which prohibited plaintiff's counsel from engaging in *ex parte* contacts with former or present Memorial employees. For the reasons which follow, Memorial's motions will be denied, and the court's previous Order concerning *ex parte* contacts will be vacated.

## Background

Mr. Brown was incarcerated at the Jail from July 26, 1989 through January 5, 1990, although his present action is primarily concerned with events occurring over the seven-day period from July 26 through August 2, 1989. During that time, Mrs. Podemski, a licensed practical nurse employed by Memorial, was assigned to the Jail pursuant to Memorial's contract to provide healthcare services for Jail inmates. She terminated her employment with Memorial on May 27, 1990.

Mr. Brown's original *pro se* complaint, filed on May 18, 1990, named only St. Joseph County and Sheriff Nagy as defendants. Counsel later appeared for Mr. Brown and, on August 31, 1990, he was granted leave to file an amended complaint expanding his claims against St. Joseph County and Sheriff Nagy, but adding no new defendants.

In late 1990 or early 1991, after Mrs. Podemski had terminated her employment with Memorial, one of Mr. Brown's attorneys, Lance Wittry, contacted her by telephone. Mr. Wittry subsequently interviewed Mrs. Podemski in South Bend on February 1, 1991. On June 24, 1991, Mr. Brown was granted leave to file a second amended complaint which added defendants Canarecci, Dombrowski, Memorial, Foley and Van Deventer.

On September 11, 1992, Mr. Wittry contacted and made arrangements to meet with Karen Molnar, a nurse formerly employed by Memorial, who worked at the Jail in July, 1989. He later received a letter dated September 11, 1992, from Memorial's Attorney, D. Andrew Spalding, objecting to his contact with Ms. Molnar, asserting that his actions violated Rule 4.2 of the Model Rules of Professional Conduct, and indicating that Ms. Molnar had been advised not to speak to him under any circumstances.

Mr. Wittry subsequently forwarded a proposed affidavit to Mrs. Podemski, along with a cover letter dated September 14, 1992, asking that she sign the affidavit if she found it to be true and complete, and return it to Mr. Wittry as soon as possible. On September 16, 1992, Mr. Wittry, on behalf of the plaintiff, filed a motion seeking court permission to engage in informal, *ex parte* contacts with Ms. Molnar, and another motion on September 28, 1992, requesting court authorization to have similar contacts with present Memorial employees. Memorial responded to Mr. Wittry's motions on October 5, 1992, asserting that it would be improper for Mr. Wittry to contact any of its past or present employees. According to Memorial, all such employees were considered "parties" for purposes of Rule 4.2, and were also "represented by counsel," by virtue of the fact that Memorial's liability insurer had retained Mr. Spalding's law firm to represent all former and present Memorial employees insured under its policy. On the strength of these representations, the court denied Mr. Wittry's motions on October 7, 1992, and barred him from engaging in *ex parte* communications with any past or present Memorial employees whose employment included the treatment of persons at the Jail.

The parties later agreed to schedule the depositions of current and past Memorial employees, including Mrs. Podemski. On November 10, 1992, Mr. Spalding met with Mrs. Podemski to discuss her upcoming deposition. During their conversation, she informed him that she had previously met with Mr. Wittry and that he had asked her questions about the nursing policies, procedures and practices at the Jail. On or about November 11, 1992, Mr. Spalding contacted Mr. Wittry, advised him that he was concerned about Mr. Wittry's *ex parte* contact with Mrs. Podemski, and requested that he voluntarily withdraw from the case. Mr. Wittry confirmed that he had met with Mrs. Podemski, but disagreed that his contact was improper or that there were any grounds for his disqualification.

Between November 11 and November 16, 1992, Mr. Spalding and Mr. Wittry discussed a proposed stipulation whereby Mr. Brown would agree to forego any claim that Memorial's practices and customs resulted in a violation of his constitutional rights. Mr. Spalding claims that during one of their conversations he asked Mr. Wittry if he had any statements from Mary Podemski, and that Mr. Wittry responded: "No. All I have are a few notes and I can't find them right now." (Spalding Affidavit of Dec. 30, 1992, p. 3.) Mr. Wittry recalls no such inquiry by Mr. Spalding and therefore concludes that the conversation did not occur. (Wittry Affidavit of Jan. 14, 1993, p. 24.) The stipulation was signed prior to the commencement of Mrs. Podemski's deposition on November 17, 1992.

During the course of Mrs. Podemski's deposition, Mr. Wittry produced her affidavit. At that point, Mr. Spalding advised Mr. Wittry that he never would have agreed to the deposition if he had known of the existence of the affidavit, stated that the stipulation which had been signed earlier was no longer in effect, and indicated that he was reserving his right to seek disqualification of both Mr. Wittry and Mrs. Podemski. The present motions followed.

### Discussion

In accordance with Local Rule DE–IV, this court must apply the Rules of Professional Conduct adopted by the Supreme Court of Indiana. Effective January 1, 1987, the Supreme Court of Indiana adopted Rule 4.2 of the ABA Model Rules of Professional Conduct, as Rule 4.2 of the Indiana Rules of Professional Conduct.[1] That Rule provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

The prohibition against attorney communications with parties known to be represented by other counsel is primarily designed to "preserve the integrity of the attorney-client relationship by protecting a represented party from being taken advantage of by adverse counsel." *Curley v. Cumberland Farms, Inc.*, 134 F.R.D. 77, 82 (D.N.J.1991); *University Patents, Inc. v. Kligman*, 737 F.Supp. 325, 327 (E.D.Pa.1990); *Frey v. Department of Health and Human Services*, 106 F.R.D. 32, 34 (E.D.N.Y.1985). *See Valassis v. Samelson*, 143 F.R.D. 118, 120 (E.D.Mich.1992) (rule intended to "prevent one party's attorney from exploiting the lack of legal knowledge of a momentarily uncounseled adverse party"); *Sherrod v. The Furniture Center*, 769 F.Supp. 1021, 1022 (W.D.Tenn.1991) (same); *Hanntz v. Shiley, Inc. a Div. of Pfizer, Inc.*, 766 F.Supp. 258, 265 (D.N.J. 1991) (rule "prevents a represented party from being overwhelmed by opposing counsel"); *Polycast Technology Corp. v. Uniroyal, Inc.*, 129 F.R.D. 621, 625 (S.D.N.Y.1990) (similar rule under DR 7–104(A)(1) "prevents a lawyer from circumventing opposing counsel to obtain unwise statements from the adversary party, . . . preserves the integrity of the attorney-client relationship, . . . helps prevent the inadvertent disclosure of privileged information, . . . [and] may facilitate settlement by channelling disputes through lawyers accustomed to the negotiation process."); *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F.Supp. 1080, 1084 (S.D.N.Y. 1989) (DR 7–104(A)(1) "prevents unprincipled attorneys from exploiting the disparity in legal skills between attorney and lay people."); *Wright v. Group Health Hospital*, 103 Wash.2d 192, 691 P.2d 564, 567, 50 A.L.R. 4th 641 (1984) (purposes of DR 7–104(A)(1) include "preserving the proper functioning of the legal system and shielding the adverse party from improper approaches"); 2 G. Hazard & W. Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct*, § 4.2:101 at p. 730 (2d ed. 1990); *ABA/BNA Lawyers' Manual on Professional Conduct* 71:302 (1990); Jerome N. Krulewitch, Comment, *Ex Parte Communications with Corporate Parties: The Scope of*

---

**1.** The Supreme Court of Indiana adopted the ABA Model Rules of Professional Conduct through an amendment to Indiana Admission and Discipline Rule 23, Section 2. Indiana previously utilized the Code of Professional Responsibility, of which DR 7–104(A)(1) was the counterpart to Rule 4.2.

the Limitations on Attorney Communications with One of Adverse Intent, 82 Nw. U.L.Rev. 1274, 1277–78 (1988); Kurlantzik, The Prohibition on Communication with an Adverse Party, 51 Conn.B.J. 136, 145–46 (1977).

Memorial initially argued that Mr. Brown's attorneys must be barred from having ex parte contact with any of its former or current employees, because all such employees were "represented by counsel." Memorial based this claim on the fact that its liability insurer, Phico Insurance Company, hired Mr. Spalding's law firm to represent "all insureds under the Phico policy including past and present employees of Memorial Hospital for all acts or omissions taking place within the scope of their employment." (Memorial's Oct. 5, 1992 Memorandum in Opposition to Plaintiff's Motion, p. 4.) Memorial maintained that its past and present employees were entitled to be advised by "their retained counsel" to refrain from discussing this case with plaintiff's counsel, and that the attorneys in Mr. Spalding's firm had "every right to advise their client not to voluntarily speak to plaintiff's counsel in informal settings and to either insist that their counsel be present or, in the alternative require plaintiff to subpoena them for a deposition." Id.

Having accepted at face value Memorial's claim that all of its employees, past and present, were "represented by counsel," the court previously prohibited plaintiff's attorneys from engaging in ex parte contact with all such employees. It is now apparent, however, that Memorial's statements implying the existence of an attorney-client relationship between Mr. Spalding's firm and its past and present employees are not supported by the evidence of record.

The existence of an attorney-client relationship is generally determined by principles of contract and agency. See Brinkley v. Farmers Elevator Mutual Insurance Co., 485 F.2d 1283, 1286 (10th Cir.1973); Jack Eckerd Corp. v. Dart Group Corp., 621 F.Supp. 725, 731–33 (D.Del.1985); Franko v. Mitchell, 158 Ariz. 391, 762 P.2d 1345 (Ariz. App.1988). While the relationship may be based upon an express agreement or implied from the actions of those involved, Sheinkopf v. Stone, 927 F.2d 1259, 1264 (1st Cir.1991); Hashemi v. Shack, 609 F.Supp. 391, 393 (S.D.N.Y.1984), it is fundamentally consensual, "existing only after both attorney and client have consented to its formation." Hacker v. Holland, 570 N.E.2d 951, 955 (Ind. App. 1 Dist.1991); Connelly v. Wolf, 463 F.Supp. 914, 919 (E.D.Pa.1978). "The client must manifest his authorization that the attorney act on his behalf, and the attorney must indicate his acceptance of the power to act on the client's account." Torres v. Divis, 144 Ill.App.3d 958, 98 Ill.Dec. 900, 494 N.E.2d 1227 (Ill.App. 2 Dist.1986); Anderson v. Pryor, 537 F.Supp. 890 (W.D.Mo.1982). The relationship cannot be created by a would-be client's unilateral act or belief, Jackson v. Pollick, 751 F.Supp. 132, 134 (E.D.Mich.1990); Hacker, 570 N.E.2d at 955; Guillebeau v. Jenkins, 182 Ga.App. 225, 231, 355 S.E.2d 453, 458 (Ga.App.1987), by the attorney alone, Zych v. Jones, 84 Ill.App.3d 647, 40 Ill.Dec. 369, 373, 406 N.E.2d 70, 74 (Ill.App. 1 Dist.1980), or by an attorney and a third party who has no authority to act on behalf of the purported client. Id.; Greer v. Ludwick, 100 Ill.App.2d 27, 241 N.E.2d 4, 10 (Ill.App.1968). It has also been observed that the relationship "does not admit of intermediaries between attorney and the client." Zych, 40 Ill.Dec. at 373, 406 N.E.2d at 74. Certainly, no attorney has the right to appear as counsel for another without the latter's consent, Id.; Hannah v. Hannah, 94 Ill.App.2d 372, 236 N.E.2d 783, 785 (1968), and it follows that an attorney cannot properly hold himself out as representing a person who has not agreed to the representation.

Here, it is undisputed that Phico retained Mr. Spalding's firm to represent Memorial, the corporation, together with Memorial's current and former employees. But that fact alone does not establish the existence of an attorney-client relationship between Memorial's counsel and its past or present employees. During her deposition, Mrs. Podemski testified that she never asked Mr. Spalding to be her attorney and did not consider him to be her attorney (Podemski Dep., p. 17–18), and Memorial has since acknowledged that "[a]t the time of Mr. Wittry's contact, Mary

Podemski would have no knowledge of May, Oberfell & Lorber and/or D. Andrew Spalding." (Memorial's Dec. 30, 1992 Response to Plaintiff's Combined Petition, p. 2.) As for Karen Molnar, the record merely shows that Mr. Wittry received a letter from Mr. Spalding objecting to Mr. Wittry's *ex parte* contact, asserting that his actions violated Rule 4.2, and stating that Ms. Molnar had been advised not to speak with Mr. Wittry. These circumstances fail to demonstrate the existence of an attorney-client relationship between Memorial's counsel and Mrs. Podemski or Ms. Molnar. None of Memorial's former or current employees have been named as parties in this action, and the record contains nothing to suggest that any of its past or present employees, including Mary Podemski and Karen Molnar, have ever sought legal advice, requested representation or shared confidential information with Memorial's counsel regarding this litigation or any other matter. *See United States v. Keplinger,* 776 F.2d 678, 701–02 (7th Cir.1985) (attorney-client relationship not established between corporate counsel and individual employees of corporation where no express agreement for individual representation was made, and employees never asked attorneys directly or indirectly to represent them individually, sought individual·legal advice, asked questions relating to personal representation, or ·made statements in confidence to attorneys); *Curley,* 134 F.R.D. at 93 (no evidence to suggest attorney-client relationship existed between former employees and corporate counsel; no indication that former employees conferred with employer's counsel or sought assistance); *see generally ABA/BNA Lawyers' Manual on Professional Conduct* 31:101–106 (1990).

■ Regardless of how much Memorial, its insurer and its attorneys may wish to provide its former and current employees with individual legal representation, an attorney-client relationship cannot be created unilaterally or imposed upon the employees without their consent. See *Jackson,* 751 F.Supp. at 134; *In re U.S. Department of Justice Antitrust Investigation,* Misc. File No. 3–92–9, 1992 WL 237318, 1992 U.S.Dist. LEXIS 14586 (D.Min. May 22, 1992) (employees and former employees whose interests may differ from interests of corporate employer cannot be compelled to accept representation by employer's counsel); *United States v. Western Electric Company, Inc.,* 1990 WL 39129, 1992 U.S.Dist. LEXIS 14586; 1990–1 Trade Cas. (CCH) P68,939 (D.D.C.1990) (employer had no right to interject its own counsel as purported representative of its employees and no right to decide for its employees whether its interests were in conflict with theirs during Justice Department investigation of employer). Memorial has failed to demonstrate that any of its past or present employees are "represented by counsel" within the meaning of Rule 4.2, *see Curley,* 134 F.R.D. at 93.

■ Memorial, however, also contends that its former employees must still be treated as represented "parties" under Rule 4.2. In this regard, Memorial points to the official ABA Comment to Rule 4.2, which in part, states:

> In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f). This Rule also covers any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question.

Memorial argues that its former employees are, in effect, "parties" for purposes of Rule 4.2 because, in the language of the official Comment, they are persons whose acts or omissions in connection with the matter may be imputed to it for purposes of civil liability. The court is not persuaded.

Memorial relies heavily on *Public Serv. Elec. & Gas v. Associated Elec. & Gas,* 745

F.Supp. 1037 (D.N.J.1990) ("*PSE & G*"), which held that *ex parte* contact with individual former corporate employees was prohibited under Rule 4.2, because their statements might be imputed to the corporation for purposes of civil or criminal liability. *Id.* at 1042. The "bright line" rule advanced in *PSE & G*, however, has since been rejected in *Goff v. Wheaton Industries*, 145 F.R.D. 351, 355–56 (D.N.J.1992); *Hanntz*, 766 F.Supp. at 270; and *Curley*, 134 F.R.D. at 86, as well as by New Jersey state courts in *Neil S. Sullivan Associates, Ltd. v. Medco Containment Services, Inc.* 257 N.J.Super. 155, 607 A.2d 1386 (Law Div.1992) and *In re Environmental*, 252 N.J.Super. 510, 600 A.2d 165 (Law Div.1991). The court's rationale in *PSE & G* has been criticized for its focus on interpreting the language of the official Comment, as opposed to confronting the question of whether a former employee can or should be considered a "party" as that term is used in the Rule. *Valassis*, 143 F.R.D. at 122; Susan J. Becker, *Conducting Informal Discovery of a Party's Former Employees: Legal and Ethical Concerns and Constraints*, 51 Md.L.Rev. 239, 287–88 (1992). It has also been noted that *PSE & G's* prohibition against all *ex parte* contact with former employees does not serve the purpose of preserving the integrity of the attorney-client relationship, since a former employee is not involved in the corporation's attorney-client relationship. *Polycast*, 129 F.R.D. at 625; Stephen M. Sinaiko, Note, *Ex Parte Communication and the Corporate Adversary: A New Approach*, 66 N.Y.U.L.Rev. 1456, 1492 (1991). The court declines Memorial's invitation to adopt the "bright line" rule from *PSE & G*.

It is clear that Rule 4.2 only prohibits attorney contact with "a *party* the lawyer knows to be represented by another lawyer in the matter." (emphasis supplied.) Neither Rule 4.2; nor the official Comment, makes any reference to former employees. If the "party" referred to in Rule 4.2 is a corporation, then a former employee who no longer has any relationship with that corporation cannot be equated with that "party." In this regard, the court in *Valassis* observed:

> If one party is an organization, the first level of inquiry is whether the person in question is an agent of that organization. If he is not, then he cannot be a party because he lacks any relevant connection to the organization which could reasonably place him in the role of a party. Only if a person is an agent of the organization need a court advance to the next level to determine whether the agent fits within the specific category of organizational agents to which Rule 4.2 is applicable.

143 F.R.D. at 123. Likewise, in *Hanntz*, the court stated:

> [I]t cannot be said a former employee is a party because a former employee ordinarily cannot bind the corporation in the sense that an agent binds a principal. Although a former employee can certainly damage a corporation by revealing facts giving rise to liability, that possibility does not implicate the purposes of RPC 4.2.

766 F.Supp. at 269–70. *See Breedlove v. Tele–Trip Company, Inc.*, No. 91 C 5702, 1992 WL 202147, 1992 U.S.Dist. LEXIS 12149 (N.D.Ill. Aug. 14, 1992) ("Former employees, unlike current ones, cannot be construed as parties or agents of a corporate party and, thus, are not within the scope of the Rule."); *Polycast*, 129 F.R.D. at 626 (neither Rule 4.2 nor the official Comment justify a departure from "the traditional view ... that former employees are not encompassed within the term 'party' ... and so may be contacted without notice to the corporation's attorney"); *Monsanto Company v. Aetna Casualty and Surety Company*, 593 A.2d 1013, 1016 (Del.Super.1990) (Rule 4.2 does not bar contacts with former employees since they are not "parties" and cannot bind their former employers). With respect to Rule 4.2, Professor Hazard has also observed that

> [t]he 'no contact' regime ... does not address communication with *former* agents and employees, and technically there should be no bar, since former employees cannot bind the organization, and their statements cannot be introduced as admissions of the organization. Speaking with a former employee therefore does not do damage to the policy underlying Rule 4.2— undercutting or 'end-running' an on-going

lawyer-client relationship. (emphasis in original.)

2 G. Hazard & W. Hodes, *supra*, § 4.2:107 at p. 738; *ABA/BNA Lawyers' Manual on Professional Conduct* 71:304 (1990).

On March 22, 1991, the ABA Standing Committee on Ethics and Professional Responsibility issued Formal Opinion 91–359, which concluded that the prohibition of Rule 4.2 does not extend to former employees. In this regard, the opinion states:

> While the Committee recognizes that persuasive policy arguments can be and have been made for extending the ambit of Model Rule 4.2 to cover some former corporate employees, the fact remains that the text of the Rule does not do so and the Comment gives no basis for concluding that such coverage was intended. Especially where, as here, the effect of the Rule is to inhibit the acquisition of information about one's case, the Committee is loath, given the text of the Model Rule 4.2 and its Comment, to expand its coverage to former employees by means of liberal interpretation.
>
> Accordingly, it is the opinion of the Committee that a lawyer representing a client in a matter adverse to a corporate party that is represented by another lawyer may, without violating Model Rule 4.2, communicate about the subject of the representation with an unrepresented former employee of the corporate party without the consent of the corporation's lawyer.

ABA Formal Opinion 91–359 at 3.

This court must agree with the majority of courts which have held that Rule 4.2 and its analogue, DR 7–104(A)(1), have no application to former employees who no longer have any relationship with a corporation. *See Goff,* 145 F.R.D. at 355; *Valassis,* 143 F.R.D. at 121; *In re Domestic Air Transportation Antitrust Litigation,* 141 F.R.D. 556 (N.D.Ga.1992); *Shearson Lehman Brothers, Inc. v. Wasatch Bank,* 139 F.R.D. 412 (D.Utah 1991); *Dubois v. Gradco Systems, Inc.,* 136 F.R.D. 341 (D.Conn.1991); *Action Air Freight, Inc. v. Pilot Air Freight Corp.,* 769 F.Supp. 899 (E.D.Pa.1991); *Sherrod,* 769 F.Supp. at 1022; *Siguel v. Trustees of Tufts College,* Civil Action No. 88–0626–Y, 1990 WL 29199, 1990 U.S.Dist. LEXIS 2775 (D.Mass. Mar. 12, 1990); *Oak Industries v. Zenith Industries,* No. 86C–4301, 1988 WL 79614, 1988 U.S.Dist. LEXIS 7985 (N.D.Ill. July 27, 1988); *Fulton v. The Honorable Donald Lane,* 829 P.2d 959 (Okla.1992); *Niesig v. Team I,* 76 N.Y.2d 363, 559 N.Y.S.2d 493, 495, 558 N.E.2d 1030, 1032 (1990); *DiOssi v. Edison,* 583 A.2d 1343 (Del.Super.1990); *Bobele v. Superior Court,* 199 Cal.App.3d 708, 714–15, 245 Cal.Rptr. 144, 148 (Cal.App. 2 Dist.1988); *Wright,* 691 P.2d at 569; Sinaiko, *supra,* 66 N.Y.U.L.Rev. at 1491–93. Accordingly, the court finds that Mr. Wittry did not violate Rule 4.2 in making *ex parte* contact with former Memorial employees Mary Podemski and Karen Molnar.

■ In the case of *current* corporate employees, courts, commentators and bar associations have struggled to fashion an anti-contact rule which strikes an appropriate balance between the interests of the corporation and the need of adverse parties to conduct inexpensive informal discovery. Such efforts have spawned the so-called "blanket" test, barring all *ex parte* contact with current and former corporate employees, *see* Sinaiko, *supra,* 66 N.Y.U.L.Rev. at 1490; the "scope of employment" test, prohibiting interviews of corporate employees concerning matters within the scope of their employment, *see Morrison v. Brandeis University,* 125 F.R.D. 14, 17 (D.Mass.1989); Krulewitch, *supra,* 82 Nw.U.L.Rev. at 1290; the "managing-speaking-agent" test, allowing *ex parte* contact with corporate personnel, except for "those employees who have the legal authority to 'bind' the corporation in a legal evidentiary sense, ie., those employees who have 'speaking authority' for the corporation." *Wright,* 691 P.2d at 649–50; *Chancellor v. Boeing Co.,* 678 F.Supp. 250 (D.Kan.1988); a variant of the "managing-speaking-agent" test which "defines 'party' to include corporate employees whose acts or omissions in the matter under inquiry are binding on the corporation (in effect, the corporation's 'alter egos') or imputed to the corporation for purposes of its liability, or employees implementing the advice of counsel." *Niesig v. Team I,* 559 N.E.2d at 498, 558 N.E.2d at 1035; the "balancing" test which proceeds on a case-by-

case basis to analyze and compare "the degree to which ex parte communication is needed to unearth relevant information, the danger of generating evidentiary admissions against the corporation under Federal Rule of Evidence 801(d)(2)(D), and the degree to which 'effective representation of counsel' requires that the corporation's counsel be present at interviews," Sinaiko, *supra,* 66 N.Y.U.L.Rev. at 1489–90; *Mompoint v. Lotus Development Corp.,* 110 F.R.D. 414 (D.Mass.1986); and the "control group" test, permitting *ex parte* interviews with all except for the most senior management officials in the corporation's "control group," *Fair Automotive Repair, Inc. v. Car–X Service Systems, Inc.,* 128 Ill.App.3d 763, 84 Ill.Dec. 25, 471 N.E.2d 554 (Ill.App. 2 Dist.1984). Of these approaches, the "managing-speaking-agent" test announced in *Wright* and the variant adopted by the court in *Niesig* appear to have achieved the widest acceptance. *See* Sinaiko, *supra,* 66 N.Y.U.L.Rev. at 1485–87 (favoring the "managing-speaking-agent" test); Krulewitch, *supra,* 82 Nw.U.L.Rev. at 1298 (same); *Strawser v. Exxon Company, U.S.A.,* 843 P.2d 613 (Wyo.1992) (adopting *Niesig* test); *Dent v. Honorable Tod J. Kaufman,* 185 W.Va. 171, 406 S.E.2d 68, 72 (1991) (same).

This court, however, prefers the test embodied in the official Comment to Rule 4.2, which equates an organizational or corporate "party" with: (1) persons having a managerial responsibility on behalf of the organization; (2) persons whose acts or omissions in connection with the matter may be imputed to the organization for purposes of civil or criminal liability; or (3) any person whose statement may constitute an admission on the part of the organization. The third category is a reference to Fed.R.Evid. 801(d)(2)(D) which provides that a statement is not hearsay if it is offered against a party and is "the statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship...." In discussing the inclusion of the second and third categories, Professor Hazard has observed:

This gloss gives a sound practical cast to the rule: those who can hurt or bind the organization *with respect to the matter at hand* are off limits except for formal discovery or except with the consent of the entity's lawyer. A typical example would be a truck driver whose involvement in an accident led to a law suit against his employer. The truck driver is plainly not in the control group, yet the company and the company's lawyer have a strong interest in monitoring what he says to their opponent, because their opponent can use what he says free of the hearsay rule. (emphasis in original.)

2 G. Hazard & W. Hodes, *supra,* § 4.2:105 at p. 734. For these reasons, the court holds that a lawyer representing a client in a matter adverse to a corporate party may, without violating Rule 4.2, communicate about the subject of the representation with an unrepresented current employee, provided that the employee does not have the managing authority to speak for and "bind" the corporation, is not an employee whose acts or omissions in connection with the matter may be imputed to the corporation for purposes of civil or criminal liability, and is not a person whose statement may constitute an admission on the part of the corporation.

█ In making *ex parte* contact with any unrepresented former employee or an unrepresented current employee outside of the categories indicated above, counsel must fully comply with Rule 4.3 of the Indiana Rules of Professional Conduct, which provides as follows:

In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.

Under this Rule, the lawyer must make clear to the unrepresented employee the lawyer's role in the case, including the nature of the case, the identity of the lawyer's client, and the fact that the person's former or current employer is an adverse party. The lawyer may not give the person advice other than suggest that the person obtain counsel. *In re Domestic Air Transp. Antitrust Litiga-*

*tion,* 141 F.R.D. at 562; *Hanntz,* 766 F.Supp. at 264; *Dubois,* 136 F.R.D. at 347; ABA Formal Opinion 91–359.

■ Counsel making *ex parte* contact with an unrepresented person must also abide by Rule 4.4 of the Indiana Rules of Professional Conduct, which provides:

> In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.

In accordance with this Rule, counsel must refrain from seeking, inducing or listening to the disclosure of any matter protected by the attorney-client privilege. *Valassis,* 143 F.R.D. at 124–25; *Action Air Freight, Inc.,* 769 F.Supp. at 903; *Hanntz,* 766 F.Supp. at 271; *Dubois,* 136 F.R.D. at 347; 2 G. Hazard & W. Hodes, *supra,* § 4.2:107 at p. 738; Sinaiko, *supra,* 66 N.Y.U.L.Rev. at 1501.

■ As a final matter, the court must address Memorial's motion to disqualify plaintiff's counsel for ethical violations. This motion is based in large part upon Mr. Wittry's alleged violation of Rule 4.2 (which the court has already resolved in Mr. Wittry's favor), but it is also concerned with his alleged violation of Rules 3.4(a) and 4.1 of the Indiana Rules of Professional Conduct. The latter charges arise out of the telephone conversation in which Mr. Spalding allegedly asked Mr. Wittry if he had any statements from Mary Podemski. Memorial claims that Mr. Wittry's negative response, when in fact he was in possession of an affidavit by Mrs. Podemski, amounted to "an affirmative concealment of a document having potential evidentiary value," in violation of Rule 3.4(a)[2], as well as "a false statement of material fact to defendant's counsel in violation of Rule 4.1."[3]

■ As Memorial correctly notes, this court may order the disqualification of counsel for a violation of one or more of the Rules of Professional Conduct. *Groper v. Taff,* 717 F.2d 1415 (D.C.Cir.1983). At the same time, however, the court views disqualification as an extreme sanction. An attorney should be disqualified

> only when there is 'a reasonable possibility that some specifically identifiable impropriety' actually occurred, in light of the interest underlying the standards of ethics, the social need for ethical practice outweighs the party's right to counsel of his own choice.

*United States v. Kitchin,* 592 F.2d 900, 903 (5th Cir.1979) (*quoting Woods v. Covington County Bank,* 537 F.2d 804 (5th Cir.1976)); *Kitchen v. Aristech Chemical,* 769 F.Supp. 254, 257 (S.D.Ohio 1991).

In this case, both Mr. Spalding and Mr. Wittry have submitted affidavits on the subject of the telephone conversation, and the court also heard evidence bearing on the dispute during oral argument on the present motions. After considering the evidence, the court cannot find any breach of ethics as Memorial has claimed.. In passing, the court notes that Mr. Spalding was able to meet with Mrs. Podemski on November 10, 1992, near the time of the telephone conversation and prior to Mrs. Podemski's deposition. This, together with the fact that Mr. Wittry produced Mrs. Podemski's affidavit during her deposition, and the fact that Mr. Spalding has since declared the parties' stipulation void, would appear to eliminate any prejudice to Memorial resulting from delay in the production of the affidavit.

For the foregoing reasons, the court's Order of October 7, 1992 is **VACATED**. Defendants' motion to suppress the affidavit of Mary Podemski and to bar her testimony, and defendants' motion to disqualify plaintiff's counsel for alleged ethical violations are **DENIED**.

**SO ORDERED.**

---

**2.** Rule 3.4(a) provides, in pertinent part, that a lawyer shall not "unlawfully obstruct another party's access to evidence or unlawfully . . . conceal a document or other material having potential evidentiary value."

**3.** Rule 4.1 states:

In the course of representing a client a lawyer shall not knowingly:

    (a) make a false statement of material fact or law to a third person; or

    (b) fail to disclose that which is required by law to be revealed.